UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HILERY NOEL MAISON,

     Petitioner,                      Case No. 2:19-CV-12046

v.                             UNITED STATES DISTRICT COURT JUDGE
                                       GERSHWIN A. DRAIN

SHAWN BREWER,

     Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS; AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

### I.    INTRODUCTION

Hilery Noel Maison ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Petitioner challenges her convictions for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), two counts of torture, Mich. Comp. Laws § 750.85, and two counts of first-degree child abuse, Mich. Comp. Laws § 750.136b(2).  *Id.*  For the reasons that follow, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

### II.    BACKGROUND

Petitioner and her husband were convicted following a jury trial in the St. Clair County Circuit Court.  The Court recites verbatim the relevant facts regarding

1

Petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), *see e.g.* *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants, husband and wife, were charged with and convicted of torture, first-degree child abuse, and felony-murder with respect to the husband's five-year-old daughter from a prior relationship and of torture and first-degree child abuse with respect to the husband's three-year-old daughter from a prior relationship. Essentially, both girls were deprived of food, water and medical attention, and suffered from malnutrition and dehydration which, in the five-year old's case, also led to severe pneumonia and caused her death. Two other children in the household, the wife's 10–yeard-old (sic) son from a prior relationship, and the parties' eighteen-month-old child together, were healthy and unharmed.

*People v. Maison*, No. 332162, 2017 WL 5162310, at *1 (Mich. Ct. App. Nov. 7, 2017).

Petitioner's conviction was affirmed. *Id.*; *leave den.* 501 Mich. 1062, 910 N.W.2d 275 (2018). Petitioner then filed a petition for a writ of habeas corpus, which was held in abeyance because it contained an unexhausted claim. *See Maison v. Brewer*, No. 2:19-CV-10057, 2019 WL 2433503 (E.D. Mich. June 11, 2019).

In July 2019, Petitioner filed the present habeas petition, in which she deleted the unexhausted claim. Petitioner seeks a writ of habeas corpus on the following grounds:

> I.   Defendant's constitutional right to due process of law, U.S. CONST. amend. XIV; CONST. 1963, art. I, § 17 was violated when the evidence of the two counts of 1st degree child abuse

regarding MM5 and MM3[1] was legally insufficient to convict her of that offense at trial and the trial court abused its discretion when it denied the motion for a directed verdict.

II.   Defendant was denied the effective assistance of counsel guaranteed by the federal and state constitutions (U.S. CONST., AM VI; CONST. 1963, art. I, § 2) where trial counsel failed to call the 10-year old sibling who lived in the home and reported to police that nothing was amiss, failed to investigate or cross examine the experts as to MM3's health issues that could have been caused by lead poisoning, failed to impeach Dr. Spitz on what MM5's weight would have been if she hadn't been severely dehydrated at her time of death due to pneumonia, and failed to move for a *Daubert* hearing to determine the appropriate methodology to determine starvation and how dehydration affects that analysis.

### III.   STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Because the victims were minors at the time of the offense, the Court will refer to them by their initials and age only to preserve their privacy. *See* Fed. R. Civ. P. 5.2(a).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it

4

is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## IV.   ANALYSIS

### A. Claim # 1: Sufficiency of evidence claim

Petitioner first argues that there was insufficient evidence to support her conviction of felony murder, two counts of first-degree child abuse, and two counts of torture in the death of her 5-year-old step-daughter, MM5, and the near death of 3-year-old MM3.  Petitioner argues that food and water were not withheld from either child and that the expert medical testimony could not scientifically establish that either child was "malnourished."  ECF No. 1, PageID.8–16.  Petitioner also claims that there was no evidence to show she intended to harm either child.  *Id*. at PageID.18–19.

The Supreme Court has indicated that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a

reasonable doubt."   Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318–19 (internal citation and footnote omitted) (emphasis in the original).

When addressing a sufficiency of evidence challenge, the reviewing court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."  *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the

state court's adjudication of that claim.  Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application of

the *Jackson* standard.  *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational

people can sometimes disagree, the inevitable consequence of this settled law is that

judges will sometimes encounter convictions that they believe to be mistaken, but

that they must nonetheless uphold."  *Id.*  For a federal habeas court reviewing a state

court conviction, "the only question under *Jackson* is whether that finding was so

insupportable as to fall below the threshold of bare rationality."  *Coleman v.*

*Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence

does not fall below that threshold is entitled to "considerable deference under [the]

AEDPA."  *Id.*

> Under Michigan law, the elements of first-degree felony murder are:
>
> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high
> risk of death or great bodily harm with knowledge that death or great
> bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the
> commission of  one of the felonies enumerated in the felony
> murder statute.

*Matthews v. v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing to *People v.*

*Carines*, 597 N.W.2d 130, 136 (Mich. 1999)).   The Michigan Supreme Court

indicated that: "[A] jury can properly infer malice from evidence that a defendant

set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 299 N.W.2d 304, 327 (Mich. 1980).

First-degree child abuse and torture are both considered predicate felonies under Michigan's felony murder statute. *See Galvan v. Stewart*, 705 F. App'x 392, 398 (6th Cir. 2017). "A person is guilty of child abuse in the first-degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Mich. Comp. Laws § 750.136b(2). First-degree child abuse is a specific intent crime. *Galvan,* 705 F. App'x at 398 (citing *People v. Maynor,* 683 N.W.2d 565 (Mich. Ct. App. 2004)). Physical harm is defined under Michigan's child abuse statute as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." Mich. Comp. Laws § 750.136b(1)(f).

Under Michigan law, a person is guilty of torture if the person "with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control." *Galvan*, 705 F. App'x at 398 (citing Mich. Comp. Laws § 750.85). "Cruel" is defined in the torture statute as "brutal, inhuman, sadistic, or that which torments." Mich. Comp. Laws § 750.85(2)(a). "Great bodily injury" is defined as either:

> (i) Serious impairment of a body function as that term is defined in section 58c of the Michigan vehicle code, 1949 PA 300, MCL 257.58c.
>
> (ii ) One or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds. Mich. Comp. Laws § 750.85(2)(c).

The Michigan Court of Appeals rejected Petitioner's claim at great length.

The court first found that the prosecutor presented sufficient evidence to establish

that Petitioner and her husband acted with malice aforethought so as to support the

felony murder conviction, as follows:

> Daniel Spitz, a forensic pathologist and the chief medical examiner for St. Clair and Macomb Counties, conducted an autopsy on [MM5]. He testified that the cause of [MM5]'s death was dehydration and malnutrition, complicated by pneumonia and related sequelae due to neglect, and that the manner of death was homicide. Dr. Spitz further elaborated that the degree to which [MM5] was dehydrated and malnourished indicated that these conditions had been going on for more than just a couple of weeks. Spitz testified that [MM5] was neglected in that she was not being given the basic needs to thrive and that her pneumonia developed as a consequence of her debilitated state.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> Nearly all persons who came in contact with [MM5] on the night of her death testified to her being noticeably gaunt. For example, Andrew Teichow of the Port Huron Police Department testified to [MM5] being extremely thin with her bones sticking out and Doctor Bradley Coloia, an emergency room physician at Lake Huron Medical Center, testified that she was small, emaciated, and appeared malnourished.
>
> Even if defendants had not intended to kill [MM5] when they failed to provide her with sufficient food, water, and appropriate medical attention, the extreme extent of her malnourishment and injuries established that the lack of basic necessities was neither accidental nor done without malice. Defendants set in motion a force likely to cause

9

great bodily harm to [MM5]. At the very least, defendants were aware of [MM5]'s painfully thin body and her medical needs and did nothing to address these clearly obvious conditions. Viewing the facts in a light most favorable to the prosecution, a jury could have easily inferred malice in these circumstances.

*People v. Maison*, No. 332162, 2017 WL 5162310, at *2 (Mich. Ct. App. Nov. 7, 2017).

The court further concluded that the prosecution presented sufficient evidence to establish the predicate felonies of first-degree child abuse and torture:

Since [MM5] died of dehydration and malnutrition, complicated by pneumonia related sequelae due to neglect, and further presented with an extraordinary amount of bruises all over her body, the injuries she suffered plainly meet the definition of serious physical harm.

With respect to whether defendants knowingly or intentionally caused serious physical or serious mental harm to [MM5], it is significant that [MM5] was suffering from pneumonia, severe malnourishment, and severe irritation in her vaginal and anal area that was bloody at the time of her death, yet defendants did not seek medical treatment for her. According to both paramedics responding to the home, [MM5]'s vaginal area was red, inflamed, and, according to one, "a dried bloody mess." All who saw her described her appearance as emaciated, extremely thin and gaunt, or variations thereof, and medical records clearly established that [MM5] had been losing weight in the two years prior to her death. Defendants' expert testified that [MM5] was neglected and malnourished. And, both Dr. Spitz and the emergency room doctor who attended [MM5] testified that she had likely been dead for a while before defendants called 911. These facts are significant because first-degree child abuse does not require an affirmative act and may be committed by an omission.

The second degree child abuse statutes, MCL 750.136b(3)(b) and (c), both require that the defendant "knowingly or intentionally commits an act." MCL 750.136b(2), on the other hand requires only that the defendant "knowingly or intentionally causes serious physical or

serious mental harm to a child." The Legislature's failure to use the term "act" in the first-degree child abuse statute indicates that first-degree child abuse can be committed by an omission. "Omission" is defined in the child abuse statutes as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." MCL 750.136b(1)(c). [MM5]'s obviously emaciated state and lack of medical attention allows for an inference that defendants willfully failed to provide food and care necessary for her welfare.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The above case supports the conclusion that the failure to act to prevent harm to a child (i.e., failing to call for medical assistance) with knowledge that serious physical harm will result satisfies the requirements of the first-degree child abuse statute. Defendants' failure to seek medical attention when [MM5] was losing weight or failing to gain weight, failing to seek medical attention when she had pneumonia and a severe inflammation of her genital area, and failing to call 911 immediately upon noting that she was becoming unresponsive all support a conviction for first degree child abuse as to [MM5]. That being so, the third element of felony murder has been satisfied. Moreover, the evidence was sufficient to support the convictions for first degree child abuse of [MM5].

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In addition, the significant amount of bruises on [MM5]'s body, coupled with her genital injury, which medical professionals described as bloody and opined would have been painful and obvious, constitute circumstantial evidence of defendants' intent to cause extreme physical and/or mental pain and suffering to [MM5]. Defendants' denial of any knowledge of a bathroom issue or genital injury when the dried blood and injury was immediately obvious to emergency personnel and officers responding to the home indicates defendants' state of mind with respect to [MM5] and their intent to cause her harm.

*People v. Maison*, 2017 WL 5162310, at \*2–5 (internal citations omitted).

This Court finds that the Michigan Court of Appeals' decision was reasonable, therefore precluding habeas relief.  Under Michigan law, although proof of death by starvation, in and of itself, is insufficient to infer the element of malice aforethought, starvation or other omissions coupled with evidence of the appropriate intent, may rise to the level of murder.  *See People v. Giddings*, 426 N.W.2d 732, 733 (Mich. Ct. App. 1988).  Since it is often difficult to prove a defendant's state of mind on issues such as knowledge and intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented."  *People v. Kanaan*, 751 N.W.2d 57, 73 (Mich. Ct. App. 2008).  "A jury may infer consciousness of guilt from evidence of lying or deception."  *People v. Unger*, 749 N.W.2d 272, 288 (Micht. Ct. App. 2008).

Here, there was sufficient evidence to support the underlying convictions of first-degree child abuse and torture.  Moreover, the Court finds that the acts or omissions that Petitioner was convicted of were done with malice aforethought, which support the first-degree felony murder conviction.  Evidence that Petitioner and her husband had jointly and systematically abused and starved MM5 for a lengthy period of time; that as a five year old, the victim was extremely underweight; that MM5 had bruising all over her body; and that her medical conditions had been ignored was sufficient evidence to establish that Petitioner committed first-degree child abuse and torture.  Moreover, Petitioner's acts and omissions were sufficient

to support the requisite malice aforethought to support her first-degree felony murder conviction. *Galvan v. Stewart*, 705 F. App'x 392, 399–400 (6th Cir. 2017).

The evidence at trial also suggested that Petitioner and her husband delayed any efforts to seek medical attention for MM5 when she was in a dire physical state. Petitioner's failure to obtain prompt medical assistance when MM5 was either losing or failing to gain weight, when she was suffering from pneumonia and a severe inflammation of her genital area, and then failing to call 911 immediately when MM5 became unresponsive, was sufficient evidence of malice to support Petitioner's felony murder and first-degree child abuse convictions. *People v. Portellos*, 827 N.W.2d 725, 728 (Mich. Ct. App. 2012), *overruled on other grounds by People v. Calloway*, 895 N.W.2d 165 (Mich. 2017). Accordingly, Petitioner is not entitled to relief on this claim.

Petitioner also argues that there was insufficient evidence to support her first-degree child abuse and torture convictions regarding MM3. The Michigan Court of Appeals rejected this claim as follows:

> When officers arrived at the home in response to a call regarding [MM5], they found [MM3] in a state of lethargy and presenting as what they described as emaciated. Officers testified that she had low energy with very tight skin, her head was much larger than her body, her face was sunken, she had a hard time standing due to her thin state, and she appeared to be in pain when one of the Officers picked her up. [MM3] asked for water and when Officers got her some, she drank 4–5 glasses of water in a span of 15 minutes. She was taken to Children's Hospital and was admitted in the early stages of shock due to malnutrition and dehydration.

Dr. Nazer, a child abuse pediatrician at Children's Hospital of Michigan, testified that she obtained [MM3]'s full medical records and performed a full medical exam of her on just a few days after she was removed from defendants' home. Dr. Nazer immediately noticed that [MM3] was very thin and when undressed, her ribs and bones protruded. [MM3]'s stomach was distended, her skin was dry, she had very little fat, and her buttocks and cheeks had a wrinkled appearance due to lack of fat. She was unsteady in walking and was weak. At 3 ½ years old, [MM3] was, according to Dr. Nazer, the weight of an eight month old baby and the height of an 18 month-old child. Based on her weight and presentation, [MM3] was not able to thrive, was severely malnourished, and was neglected. Dr. Nazer performed medical testing when she first met with [MM3] and there was no medical reason for her to have weighed so little. Dr. Nazer evaluated [MM3]'s medical records several months after her first evaluation of her and noted that since that time, her weight has increased.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Also by all accounts, after she was placed in a home other than defendants' she ate everything put in front of her, was not a picky eater and steadily gained weight. The circumstantial evidence and inferences arising therefrom were sufficient to permit a jury to find that defendants deliberately withheld food and liquid from [MM3]. Defendants' causing [MM3] to be on the brink of death due to malnourishment and dehydration and to be so emaciated that her weight was that of an 8 month old baby easily meets the statutory definition of physical harm found in the child abuse statute. The evidence was thus sufficient to find that that defendants knowingly or intentionally caused serious physical or serious mental harm to [MM3](MCL 750.136b(2)) and thus to find them guilty of first degree child abuse.

*People v. Maison*, No. 332162, 2017 WL 5162310, at \*5–6 (Mich. Ct. App.

Nov. 7, 2017).

Moreover, the court concluded that there was sufficient evidence to support the torture conviction as follows:

> Defendants' intent to cause [MM3] to suffer cruel or extreme physical pain or mental pain and suffering can be inferred from minimal circumstantial evidence. Here, a jury could infer the intent to cause extreme physical or mental pain and suffering from the extent of [MM3]'s malnourishment. To all those who saw her, [MM3] was visibly emaciated, weighing only as much as an 8 month old baby. She had difficulty walking and even standing due to her lack of food and water. A father and stepmother who would withhold food and then watch as a 3 ½ year-old slowly wasted away while not seeking medical help or giving the child to someone else to care for could easily be seen to have intentionally caused the child's suffering. There was more than sufficient evidence to convict defendants of torture as it relates to [MM3].

*People v. Maison*, 2017 WL 5162310, at *6 (internal citations omitted).

This Court finds that the Michigan Court of Appeals' decision was reasonable, therefore precluding habeas relief.  Further, the analysis in rejecting Petitioner's sufficiency of evidence challenge regarding MM5 applies equally to the sufficiency of evidence claim involving MM3.   MM3's extreme malnourishment and dehydration, coupled with Petitioner's failure to seek medical assistance for these conditions, support her convictions for first-degree child abuse and torture.

Accordingly, Petitioner is not entitled to her requested relief on her first claim.

**B. Claim # 2: Ineffective Assistance of Counsel claims**

Petitioner next argues that she was denied effective assistance of trial counsel. She must satisfy a two-prong test in order to establish that she was denied effective

assistance of counsel.  First, a criminal defendant must demonstrate that his or her counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  There is a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id*. at 689.  A defendant must overcome the presumption that, under the circumstances, the challenged action or inaction might be sound trial strategy.  *Id.*  Second, a criminal defendant must show that such performance prejudiced his or her defense.  *Id*.  To demonstrate such prejudice, a criminal defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, rather than the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'"  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the

*Strickland* standard was unreasonable.  This is different from asking whether defense

counsel's performance fell below *Strickland's* standard."  *Harrington v. Richter*, 562

U.S. 86, 101 (2011).  Indeed, "because the *Strickland* standard is a general standard,

a state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*,

541 U.S. 652, 664 (2004)).  Pursuant to the § 2254(d)(1) standard, a "doubly

deferential judicial review" applies to a *Strickland* claim brought by a habeas

petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A]

state court must be granted a deference and latitude that are not in operation when

the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S.

at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this "doubly deferential standard," the Supreme Court has

indicated that:

> Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under §
> 2254(d).  When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  The question is whether there is
> any reasonable argument that counsel satisfied *Strickland's*
> deferential standard.

*Harrington*, 562 U.S. at 105.

Here, Petitioner first argues that trial counsel was ineffective for failing to call

her then ten-year-old son E to testify.  Petitioner claims that E would have testified

17

that MM5 would not eat, that both victims were routinely provided with food, and

that punishment did not include withholding of food.

> The Michigan Court of Appeals rejected this claim as follows:

> Hilery Maison contends that trial counsel was ineffective in failing to call her 10–year-old son, [E], who was in the home on the night [MM5] died, as a witness. She points out several statements [E] made to police that she believes would have been beneficial to her at trial (e.g., [MM5] was not a good eater, defendant fought with her because she would not eat, punishments were removal of tv and spankings). However, Hilery Maison's stepfather testified that when they lived with him, he saw that [MM5] was a picky eater and if she didn't like something she would not eat it. Andrew Maison's grandmother also testified that Hilery was very loving toward the kids, that [MM5] was not a big eater and was a picky eater and that Hilery used time outs as a form of discipline. Thus, the testimony concerning [MM5] not being a good eater and discipline not involving the withholding of food was entered through other witnesses. More importantly, [E] was only at the home Mondays through Wednesdays and there were several other statements that [E] made to the police that could have been potentially harmful to defendant at trial. For example, [E] told police his parent's (sic) hid things and asked whether he would get in trouble if something bad was found at the house. He also stated that when [MM5] "passed out" the evening of death his parents were "slapping her face to wake her up like they usually do." Thus, defense counsel likely made a strategic decision not to call [E] as a witness. Hilery Maison has not established that a different outcome would likely have occurred had [E] been called as a witness and counsel was thus not ineffective for failing to doing so.

*People v. Maison*, No. 332162, 2017 WL 5162310, at *7 (Mich. Ct. App. Nov. 7,

2017).

> This Court concludes that Petitioner is not entitled to relief on this claim for

two reasons.  First, the Court finds that E could have offered potentially damaging

testimony had he been called as a witness.  Petitioner's counsel's decision to forego

calling E as a defense witness out of fear that it risked opening the door to additional incriminating testimony was a strategically defensible choice that defeats petitioner's claim.  *See Jackson v. Bradshaw*, 681 F.3d 753, 761 (6th Cir. 2012).

Second, the Court finds that Petitioner was not prejudiced by counsel's failure to call E as a defense witness because E's proposed testimony was cumulative of other evidence in support of Petitioner's claim that MM5 was a picky eater and that Petitioner did not withhold food as a form of punishment.  *Wong v. Belmontes*, 558 U.S. 15, 22–23 (2009); *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).  Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that MM5 was a picky eater and that the withholding of nourishment was not used as a form of discipline, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all."  *Wong,* 558 U.S. at 23.

Petitioner next contends that trial counsel was ineffective for failing to cross-examine Dr. Nazer about MM3's height.  The Michigan Court of Appeals rejected this claim as follows:

> Hilery contends that cross-examining Dr. Nazer about [MM3]'s height would have established that [MM3] was at a healthy body mass index (BMI) for her height when Dr. Nazer assessed her. However, Dr. Nazer's testimony was not that [MM3] was at an unhealthy BMI for her height. Her testimony was that [MM3] was chronically malnourished, losing weight from 2014 on and that this chronic malnourishment affected her height, i.e., stunted her growth. Moreover, Dr. Nazer testified several times that [MM3]'s height was that of an 18

month old and her weight that of an 8 month old, which gave the jury an idea of her height and that it was still a significant disparity from that which it should have been. Defendant has not overcome the presumption that defense counsel chose not to cross-examine Dr. Nazer concerning [MM3]'s specific height as a matter of strategy, because counsel believed it would not have made a difference.

*People v. Maison*, 2017 WL 5162310, at *8.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (internal citation omitted). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.* (internal citation omitted).

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). A defense counsel also has no duty to present impeachment evidence that would be of marginal utility. *See United States v. Munoz*, 605 F.3d 359, 381–82 (6th Cir. 2010). Here, the Court finds that any testimony from Dr. Nazer that MM3 had a healthy BMI for her height would have been of marginal utility. Indeed, Dr. Nazer's overall testimony included assertions that that MM3 was chronically malnourished; had been losing weight from 2014 on; and that the chronic malnourishment stunted MM3's growth. Dr. Nazer also testified several times that MM3's height was that of an 18 month old

20

and her weight that of an 8 month old.  In sum, Petitioner's counsel's failure to ask Dr. Nazer whether MM3's BMI was normal for her height was not deficient or prejudicial.

Petitioner next argues that her attorney was ineffective for failing to investigate or cross-examine the expert medical witnesses as to whether the victims' health issues could have been caused by lead poisoning.  The Michigan Court of Appeals rejected this claim as follows:

> Hilery Maison next claims that counsel was ineffective for failing to investigate or cross-examine the experts as to lead poisoning being a possible explanation for [the victims'] conditions. However, the only support for a potential investigation into lead poisoning provided by Hilery is two progress notes from Lighthouse Family Medicine. The first one, dated May 7, 2013, is a well child visit for [MM3], wherein it is noted that she has a personal history of exposure to lead and states that a lab test will be done to test for lead levels. The next note, dated June 17, 2015, repeats the personal history of exposure to lead, with an indication that lead levels will be checked.
>
> A June 17, 2015, blood test for [MM3] shows no presence of lead. And, the 18–month-old child of defendants lived in the same home as [the victims] and was apparently healthy and of normal weight and size. Defendant has provided no evidence that either [of the victims] did, in fact, suffer from lead poisoning. Given the evidence, defendant has not established that had counsel pursued lead poisoning the outcome of her case would have been different.

*People v. Maison*, 2017 WL 5162310, at *8–9.

As discussed *supra*, a defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant.  *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted).  A defense counsel

is not ineffective for failing to present impeachment evidence that would be of marginal utility. *See United States v. Munoz*, 605 F.3d at 381–82. There was no evidence that either victim was suffering from lead poisoning; trial counsel's failure to raise this issue was therefore not ineffective.

Petitioner next contends that trial counsel was ineffective for failing to cross-examine and impeach Dr. Spitz on the methodology he used in determining MM5's weight, had she not been dehydrated, at the time of her death. The Michigan Court of Appeals found that the difference in MM5's weight, had she not been dehydrated, was negligible:

> Notably, Dr. Spitz did not testify that one could not or should not add back in water weight lost through dehydration at the rate of 2.2 pounds per liter. He also did not testify as to any particular method for doing so. And, the 4.4 pounds that defendants' expert testified should have been added to [MM5]'s weight could reasonably be construed as "negligible" given that it boosted [MM5] only from the 3rd to 5th percentile. She was still, by both experts' opinions, underweight and requiring medical attention due to malnourishment. Defense counsel testified as to what Hilery Maison thought was the "proper" methodology for bringing [MM5] back to her pre-dehydration weight through her expert. Counsel was thus not ineffective for failing to cross-examine Dr. Spitz on his methodology (or lack thereof).

*People v. Maison*, 2017 WL 5162310, at *8.

It is within the scope of appropriate trial strategy to present a rebuttal witness rather than to cross-examine a prosecution witness. *See Bruns v. Thalacker,* 973 F.2d 625, 630 (8th Cir. 1992). Defense counsel presented his own expert witness, Dr. Shuman, to address that very point. Defense counsel's failure to cross-examine

Dr. Spitz about his methodology for determining MM5's weight and his failure to determine her pre-dehydration weight was not ineffective.  Indeed, defense counsel presented his own expert witness, Dr. Shuman, who addressed this very issue.  *See Sisco v. Huskey*, 73 F. App'x 911, 912 (9th Cir. 2003); *see also United States v. Stegawski*, 687 F. App'x 509, 514–15 (6th Cir. 2017) (defense counsel was not ineffective in making strategic choice not to cross-examine prosecution's expert in pain management; counsel wagered that defendant, as a doctor, could walk through the expert's testimony point by point).

Finally, Petitioner claims that defense counsel was ineffective for failing to move for a *Daubert* hearing to determine the correct scientific analysis for starvation and the correct procedure to determine weight in that analysis.  Petitioner bases her claim on the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).

The Supreme Court's holding in *Daubert* involves the application of the Federal Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction.  *See Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir. 1998); *see also Anderson v. Jackson*, 567 F. Supp. 2d 973, 983 (E.D. Mich. 2008) (finding that the *Daubert* decision analyzing the admission of expert testimony was concerned with the Federal Rules of Evidence and, thus, did not apply to state criminal proceedings).  Here, Petitioner would not be entitled to habeas relief

on any independent claim involving the state trial court's failure to conduct a *Daubert* hearing or the Michigan Court of Appeals' failure to order one.

The Michigan Court of Appeals also rejected petitioner's ineffective assistance of counsel claim as follows:

> The essential issues in this matter were whether defendants *intentionally* malnourished the girls and whether [MM5]'s cause of death was malnutrition and dehydration complicated by pneumonia and related sequela due to neglect as opined by Dr. Spitz, or pneumonia and infection as opined by Dr. Shuman. All testimony, including that of defendant's expert, was that [the victims] were malnourished and required medical attention. At 3 ½ and 5 they clearly could not provide nourishment for themselves. A *Daubert* hearing would have no bearing on defendants' intent with respect to whether the malnourishment was intentional or merely neglectful.
>
> A *Daubert* hearing would also have no bearing on the cause of death. Again, all parties agreed that the girls were malnourished. Further Dr. Spitz testified that he reached his conclusion as to cause of death based not simply on [MM5]'s weight, but also on objective observation of her appearance and looking at the laboratory results. Notably, he did not testify or conclude that [MM5] simply starved to death, as stated by the defendant. Rather, she was neglected by being chronically malnourished, which weakened her state and allowed for pneumonia and other issues to take hold and kill her. Dr. Shuman's difference of opinion was that she was not malnourished enough to allow for the pneumonia to occur as a result and that the pneumonia and infection simply occurred, as it sometimes does in children. And, he was the only one to give an opinion concerning whether [MM5] was "starving." A scientific opinion as to starvation was not given by Dr. Spitz. Counsel was thus not ineffective for failing to failing to request a *Daubert* hearing.

*People v. Maison*, 2017 WL 5162310, at *9 (emphasis original). In light of this analysis, the Court concludes that Petitioner failed to show that a *Daubert* hearing

would have been successful; she thus failed to show that trial counsel was ineffective for failing to move for such a hearing. *See Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012).

Accordingly, Petitioner is not entitled to habeas relief on her second claim.

## V. CONCLUSION

In sum, the Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this Opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's

assessment of petitioner's claims to be debatable or wrong.  *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).  Moreover, the Court will also deny petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## VI.   ORDER

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

**SO ORDERED.**

Dated:  November 16, 2020

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

### CERTIFICATE OF SERVICE

A Copy of this Order was served on Hilery Noel Maison, No. 975152, Women's
Huron Valley Correctional Facility, 3201 Bemis Road,
Ypsilanti, Michigan 48197 on
November 16, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk